UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TYSON ANDREWS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civ. No. 10-134-B-H |
| | ) | |
| COMMISSIONER, STATE OF MAINE | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON UNOPPOSED MOTION
FOR SUMMARY JUDGMENT**

Tyson Andrews, an inmate at the Down East Correctional Facility, seeks declaratory relief apropos to mail policies at the Maine Department of Correction which he believes violate his First Amendment rights, made applicable to the State through the Fourteenth Amendment. He faults his sole defendant, the Commissioner of the Maine Department of Corrections, for approving these policies. The two policies targeted by Andrews are the prohibition of receiving letters that are taped closed and the proscription on prisoners mailing out non-perishable food items purchased in the commissary. The Commissioner has filed a motion for summary judgment setting forth the institutional reasons for these restrictions. Andrews's response to this motion was due on May 20, 2010, and to date he has not filed any responsive pleading. After reviewing the uncontested facts in light of the governing legal standards, I recommend that the Court grant the motion for summary judgment.

*Discussion*

*Procedural Background*

Andrews originally filed suit with co-plaintiffs from the Maine State Prison -- the Long Timers Group, Inc and Nadim Haque -- and these plaintiffs were represented by counsel. When filing that complaint in Civil No. 08-305-P-H, the plaintiffs also sought class-action status. (Civ. No. 08-305-P-H, Doc. No. 2.) Magistrate Judge Rich recommended granting that motion (id. Doc. No. 12) and shortly thereafter this Court entered a procedural order asking the parties whether this action should be consolidated with Cole v. Magnusson, Civil No. 07-82-B-W, a pending case that also challenged Department of Corrections mail policy and in which I had entered a recommended decision (id. Doc. No. 13). The agreed response to that order docketed in Civil No. 08-305-P-H indicated:

> The parties in the Cole case have agreed in principle on a settlement of that case and will be filing a stipulation reflecting that agreement early next week. The parties in this case are continuing to work diligently on a settlement of at least those issues that overlap with the issues in the Cole case. In fact, counsel for both sides will be meeting jointly with the individual named plaintiffs and a representative of the Long Timers Group next week as part of this process. As a result of this and of the settlement of the Cole case, the parties in this case believe there is no reason to consolidate it with the Cole lawsuit. They ask that, instead, it be re-activated and that the Judge act on the recommended decision for class certification.

(Id. Doc. No. 16.)

A conference of counsel was held in Civil No. 08-305-P-H on June 15, 2009, and this Court terminated the scheduling order deadlines, indicating that the case was expected to settle. (Id. Doc. No. 18.) As it turned out, despite diligent efforts by plaintiffs' and defendants' counsel to iron-out a settlement, the plaintiffs rejected the settlement offer (id. Doc. No.21) and, to make a long story short, this Court eventually granted that motion of counsel to withdraw and rejected the recommendation that the class be certified (id. Doc. No. 46).

With respect to Andrews's involvement from then on out, he moved to amend his complaint on January 21, 2010, to add his challenge to the prohibition on sending out non-perishable goods but failed to do so in proper form. (Id. Doc. No. 57.) After some additional to and fro, Andrews filed a motion to amend accompanied by a proposed amended complaint (id. Doc. No.70), I granted that motion without objection (id. Doc. No. 71), and Andrews's case was severed per the agreement reached during the March 24, 2010, telephone conference (id. Doc. Nos. 66 & 67).

*Allegations of Andrews's Amended Complaint*

Andrews's amended complaint sets forth the following claims:

> This amended complaint is in regards to the prisoner mail policy 21.2 which the latest revision was done Dec. 1, 2009. This policy allows the prohibition of mail items coming in and going out of the facility.
> 1) Prisoner Mail Policy 21.2, procedure A-15 prohibits tape from being put on the incoming mail. In Feb. 2008, plaintiff Andrews was advised that a letter from his four year old daughter that had been "taped" was not allowed. When Mr. Andrews wrote to the mailroom about the issue, the mail room staff responded stating "the letter had been returned to the sender because it appeared to be from a child, it looked like scribble and was totally covered in tape. According to the policy it should have been disposed of, instead I returned it to the sender so they would know it was not allowed next time." Mr. Andrews believes these practices the mailroom executes on a daily basis are not only arbitrary and unreasonable, but a violation of his first and fourteenth amendment rights, under the United States Constitution.
> 2) Prison Mail Policy 21.2 procedure B-3-B prohibits out-going mail from containing []either contraband []or any food/drink comfort item. In May of 2009, plaintiff Andrews attempted to send his daughter a package containing: 1 bag of lolly pops, 1 bag of fruit snacks, 1 bag of animal crackers, 7 single servings of crystal lite juice mix, 20 pieces of paper, 6 pre-stamped and addressed envelopes, and one pack of colored pencils. The property officer who was working that day wouldn't allow Mr. Andrews to send out the non-perishable food items or the stamped envelopes. The property officer did allow Mr. Andrews to send out the paper and colored pencils and the letter enclosed. Mr. Andrews believes rules and actions such as not being able to send his daughter non-perishable food items are arbitrary and unreasonable and a violation of his

> first and fourteenth Amendment rights, under the United States Constitution.

(Am. Compl. at 2-3.)

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I draw all reasonable inferences in favor of Andrews, but where he bears the burden of proof, he "'must present definite, competent evidence' from which a reasonable jury could find in [his] favor." United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

Andrews has not presented any evidence in defense of the motion for summary judgment. However, this court,

> may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002). Although Andrews is provided some latitude as a pro se litigant, he must still defend his action within the context of the pleading rules. See, e.g., Collins v. Colorado Dept. of Corrections, Civ. No. 08-cv-02657-WYD-KMT, 2010 WL 254959, 8 (D. Colo. Jan. 15, 2010).

### *The <u>Turner v. Safley</u> Standard*

The controlling four-part test for analyzing these First Amendment interests of incarcerated individuals is articulated in <u>Turner v. Safley</u>, 482 U.S. 78 (1987); <u>See</u> <u>also</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989); <u>Josselyn v. Dennehy</u>, No. 08-1095, 333 Fed. Appx. 581, 584 (1st Cir. 2009) (unpublished) (addressing facial challenge to prison mail regulation, applying <u>Turner v. Safley</u>).

Part one of the <u>Turner v. Safley</u> analysis is that "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." 482 U.S. at 89. (quoting <u>Block v. Rutherford</u>, 468 U.S. 576, 586 (1984)). The Maine Department of Corrections policies "cannot be sustained" if "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." <u>Id.</u> at 89-90. Additionally, the Maine Department of Corrections' objectives must be "legitimate and neutral." <u>Id.</u> at 90. This Court must inquire whether these prison regulations, which do restrict the inmates' First Amendment rights, "operate[] in a neutral fashion, without regard to the content of the expression." <u>Id.</u> (citing <u>Pell v. Procunier</u>, 417 U.S. 817, 828 (1973) and <u>Bell v. Wolfish</u>, 441 U.S.520, 551 (1979)).

The "second factor relevant in determining the reasonableness of a prison restriction … is whether there are alternative means of exercising the right that remain open to prison inmates." <u>Id.</u> If "other avenues" remain available at the prison for the exercise of these four areas of asserted right, the Court "should be particularly conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.'" <u>Id.</u> (citing see <u>Jones v. North Carolina Prisoners' Union, Inc.</u>, 433 U.S. at 131 and quoting <u>Pell v. Procunier</u>, 417 U.S. at 827.).

5

The third consideration for this Court in analyzing the Maine Department of Corrections policies, "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. The Down East Correctional Facility is a "closed environment" and "few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." Id. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id. (citing Jones v. North Carolina Prisoners' Union, Inc., 433 U.S. at 132-33).

The fourth and final Turner v. Safley inquiry addresses whether or not there are ready alternatives to these First Amendment implicated policies. Id. (citing Block v. Rutherford, 468 U.S. at 587). "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id. "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Id. at 90-91. But if Andrews "can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. at 91.

The Beard v. Banks, 548 U.S. 521 (2006) plurality made it clear, over a dissent on this question by Justice Thomas, that the Turner v. Safley/Overton v. Bazetta analysis remains the standard applicable to these types of First Amendment challenges in the correctional setting. 548 U.S. at 528-29. Overton v. Bazetta is cited by the plurality for the proposition that "courts owe 'substantial deference to the professional judgment of prison administrators.'" Beard v. Banks,

548 U.S. at 528 (quoting <u>Overton v. Bazetta</u>, 539 U.S. at 132). <u>Overton v. Bazetta</u> emphasized that a court must ask whether or not "[p]rison administrators had reasonably exercised their judgment as to the appropriate means of furthering penological goals." 539 U.S. at 133. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." <u>Id.</u> (citing <u>Jones v. N.C. Prisoners' Labor Union, Inc.</u>, 433 U.S. at 128 (1977), <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. at 350, and <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001)).

*Undisputed Facts*

The reason the Department of Corrections mail policy prohibits letters being sent to prisoners that are "taped" is that it would be easy to hide drugs or hazardous substances on the sticky side of tape. There are not the resources (staff, time, or money) available to pull off tape and to test for drugs or hazardous substances. There would not necessarily be tests readily available that would not detect all such substances. There have been numerous instances in which mail has been used to try to send drugs to prisoners and to allow in "taped" letters would provide an easy means for this to be accomplished. One reason the policy prohibits the mailing out of food and drink items is that there is no way to inspect all these items to determine if they have been tampered with. There have been instances in which prisoners have tried to mail out bodily fluids, for example, and it would be easy to hide these fluids in food and drink items. Another reason is that food and drink items are prone to damage during handling and storage at the Prison prior to being mailed out. This would include most food and drink items that prisoners can buy, including chips, cookies, snack cakes, and candy bars. There have been instances of prisoner food and drink items spilling or leaking and damaging other property during handling and storage at the Prison. As well, there have been times that prisoner food and drink items in storage at the Prison have attracted vermin.

There has never been put forward, to the knowledge of the supervisor of the Prison mail room staff, any legitimate need for the "taping" of letters sent to prisoners. The same is true for the mailing out of food and drink items. For example, if a prisoner wishes a family member to receive a food or drink item as a gift, he has the ability to send money to someone in the community to buy it. In the alternative, prisoners may send items as gifts that do not consist of food or drink, such as the free all-occasion greeting cards available from the Chaplain, and various canteen items, such as CDs, art pencils and pads, and inexpensive radios. They may also order books and magazines from commercial vendors to be sent as gifts.

*Analysis*

These uncontested facts meet the Commissioner's burden under Turner v. Safley. He has articulated a valid, rational connection between the policies and the reasons set forth as justification for the policies. With respect to the tape proscription, there is concern that drugs or other hazardous substances can be transmitted to the inmate and correctional facilities do not have the resources to test each piece of tape. With respect to the prohibition on sending out food, there is the risk of tampering – such as replacing the content of a product with body fluids – and the facilities do not have the resources to test all outgoing food items. Furthermore, there is the concern of damage during handling and storage and the resulting potential for harm to other property or the attraction of vermin. The prohibitions are not an exaggerated response to the concerns identified. From a First Amendment perspective, they are neutral to the content of the 'expression.' As to alternative means available to the inmates impacted by the policies, with regards to the tape, clearly mail can be safely sent without the application of tape. With respect to food, the Commissioner proposes the reasonable option of having a third party purchase the items for the desired recipient. In all, on the record before me, these two policies are a

reasonable exercise of the Commissioner's judgment and, by his silence, Andrews has certainly not carried his burden of disproving the validity of the two challenged policies.

## *Conclusion*

Based on the record facts and the legal analysis set forth above, I recommend that the Court grant the Commissioner of the Maine Department of Corrections' unopposed motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 28, 2010.